UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TAMMY HULON,

      Plaintiff,

v.                                     CASE NO. 5:19-cv-550-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability and disability insurance benefits ("DIB"), and for supplemental security income ("SSI") due to disability.  Following an administrative hearing held on February 13, 2019, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from March 1, 2016, the alleged disability onset date, through May 1, 2019, the date of the ALJ's decision.[2] (Tr. 15-29.)  Based on a review of the record, the briefs, and the applicable

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 16.)

[2] Plaintiff had to establish disability on or before December 31, 2018, her date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 15, 68.)

law, the Commissioner's decision is **AFFIRMED**.

## I.   Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Relevant Background

In this case, Plaintiff alleges she is disabled due to physical and mental impairments.  On February 21, 2017, Plaintiff protectively filed applications for DIB and SSI due to disability she claimed began on March 1, 2016.  (Tr. 15, 235-37.)  However, the record reveals Plaintiff held gainful employment from April through September 2017. (Tr. 17, 270-71, 278.)

Plaintiff was seen twice by examining physician, Dr. Terry Kuhlwein, in the Occupational Medicine department of the Mayo Clinic in Jacksonville, Florida in 2011 and 2012.  Although this information predates the present disability applications, it is relevant to Plaintiff's overall history of symptoms she claims prevent her from working.

Medical records dated April 7, 2011 from the Mayo Clinic reflect Plaintiff injured her back while working as a parts delivery driver in May 2009, for which she treated with medication and chiropractic that gave temporary relief.  (Tr. 461-62.)   Plaintiff reported a history of anxiety that was helped by Effexor (a prescription medication), a left orbital fracture in May 2010 that continued to bother her, and "2 bulging disks in her neck diagnosed by MRI in 2008." (Tr. 463-64.)  The interview and physical examination revealed cervical and lumbar pain of uncertain etiology, a history of peripheral edema, cervical disk disease, and left orbital fracture.

Imaging from 2011 revealed Plaintiff had disk herniations at C5-6 and

3

C6-7 that had been "previously noted," with disk space narrowing at C5-6 and a slight protrusion at L4-5.  (Tr. 469.)  Dr. Kuhlwein released Plaintiff to "modified duty [work] with limited bending and twisting and no push, pull, [or] carry greater than 20 pounds."  (Tr. 466.)

Plaintiff returned to Occupational Medicine at Mayo on January 25, 2012, during which Dr. Kuhlwein again interviewed and examined Plaintiff.  Dr. Kuhlwein noted Plaintiff had remained off work, continued to have double-vision, continued to have cervical and lumbar "strain," and had no significant change from the April 2011 examination.  As before, Dr. Kuhlwein released Plaintiff to "modified duty [work] with limited bending and twisting and no push, pull, [or] carry greater than 20 pounds."  (Tr. 469.)

Records spanning October 2015 through April 2016 from Shands Healthcare at the University of Florida are replete with notations of Plaintiff's complaints of neck, back and foot pains.  (Tr. 478-505, 514-16.)  Reports of anxiousness, depression, insomnia, carpal tunnel syndrome are spread throughout the treatment records, as are reports of normal mood and affect, normal ranges of motion, and normal pulmonary and cardiovascular exams.  (*Id*.)  Treatment appears to have consisted of prescription medications, with a procedure of facet joint injection and radiofrequency lesioning occurring in the lumbar area of the spine on December 4, 2015.  (*See* Tr. 514, 516.)

It appears Plaintiff transferred her health care to the Three Angels Clinic and Dr. Joanne Davson-Sterling, M.D., in Ocala, Florida for 2017.  (Tr. 539-543, 592-649.)  There, Plaintiff was repeatedly diagnosed with chronic low back pain, fatigue and/or insomnia, left finger swelling, and hypothyroidism.  She was treated with prescription medications, many of which were the same as prescribed through Shands and U.F. Healthcare, and she was given recommendations for home stretching and exercise.  (*Id.*)

The record reveals Plaintiff's medical treatment then moved to the Hope Clinic in Ocala, Florida, with several advanced nurse practitioners primarily treating Plaintiff and an occasional visit with a medical doctor documented.  The record contains fourteen (14) appointments Plaintiff had at the Hope Clinic from January 2018 through January 2019. (Tr. 544-47, 566-91, 650-53.)  Although Cindy Grow, ARNP, reported having seen Plaintiff four times in 2018, a close review of the record reveals Nurse Grow was a treating source on six occasions: namely, January 9, February 20, June 12, August 7, September 18, and October 30, 2018. (*See id.*)

## III.   Discussion

Plaintiff raises three issues on appeal.  Plaintiff first argues the ALJ erred in giving little weight to the opinions of the consultative, examining psychologist and her treating nurse practitioner.  (Doc. 29 at 13-21.) Plaintiff next argues that the ALJ erred in finding Plaintiff's anxiety was a "non-

severe" impairment, and then compounded that error by failing to consider the anxiety in combination with Plaintiff's other impairments at steps 3 and 4 of the sequential evaluation process.[3]  (Doc. 29 at 21-23.)  Lastly, Plaintiff asserts the residual functional capacity ("RFC") assessment determined by the ALJ was not supported by substantial evidence, which therefore invalidates the testimony of the vocational expert ("VE") and the ALJ's determination Plaintiff was not disabled.  (Doc. 29 at 24-27.)

Defendant responds that the ALJ properly considered all of Plaintiff's impairments and satisfactorily evaluated the medical opinion evidence in determining Plaintiff's RFC.  (Doc. 31 at 5-17.)

On the facts of this case, the Court finds no error in the ALJ's determination of Plaintiff's severe and non-severe impairments, the ALJ's evaluation of the opinion evidence, or the RFC.

### A.    Determining Plaintiff's Impairments, Singly and in Combination

Plaintiff takes issue with the list of severe impairments found by the ALJ, arguing the ALJ erred in declining to find more of Plaintiff's conditions were severe impairments.  (Doc. 29 at 21-24.)  She also asserts the administrative judge failed to consider the effects of the listed impairments in

---

[3] The Commissioner follows a five-step sequential process in determining whether an individual is disabled under the Social Security Act.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

combination with all of her other impairments, and such failure warrants remand. (*Id.*)  The Court's extensive review of the overall record reveals otherwise.

At step two of the five-step evaluation process, the ALJ is called upon to determine which, if any, of a claimant's impairments are severe.  20 C.F.R. §§  404.1520(c), 416.920(c).  By definition, this inquiry is a threshold inquiry: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).  Within the Eleventh Circuit, the prevailing standard remains that an impairment is not severe if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  However, the claimant has the burden of proving that he or she has severe physical or mental impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) n.5.

Failure to find an impairment severe at step two may very well be a harmless error if the ALJ considers the functional limitations of the impairment at later steps of the evaluation.  *Burgin v. Comm'r Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (discussing harmless error if a non-severe impairment is considered at later steps); *cf. Newton v. Astrue*, Case No.

1:06-CV-1542-AJB, 2008 WL 915923, at *10 (N.D. Ga. Apr. 1, 2008) (finding error where the ALJ failed to consider impairments at step two and there was no indication in his decision that he considered them before rendering his decision).

In this case, the ALJ found Plaintiff had the medically determinable <u>severe</u> impairments of: bilateral diplopia,[4] degenerative disc disease of the cervical spine, carpal tunnel syndrome and obesity; the medically determinable <u>non-severe</u> impairments of: hypothyroidism and anxiety disorder; and the symptoms of fibromyalgia, peripheral neuropathy and plantar fasciitis without corresponding medical signs or laboratory findings. (Tr. 18, 21-22.)  Moreover, throughout the ALJ's decision are his acknowledgments and discussion of Plaintiff's complaints of lower extremity edema, depression, fatigue and insomnia, and the examining consultant's determination that Plaintiff appeared to meet the criteria for unspecified neurocognitive disorder, provisional, and unspecified anxiety disorder.

Finding four severe impairments, the ALJ moved on to step three of the analysis.  Thus, the failure to label any of Plaintiff's impairments or medical conditions as severe impairments would not alone be enough to remand.

---

[4] Bilateral diplopia refers to double vision, occurring in both eyes simultaneously.  *See* https://www.medicinenet.com/diplopia/definition.htm, https://www.medicinenet.com/bilateral/definition.htm (last visited Mar. 28, 2021).

At step three, the ALJ is called upon to consider the severity of an individual's impairments, singly and in combination, to determine whether he or she meets or medically equals a listing that directs a finding of disability.[5]  A claimant may satisfy her burden of proving disability if she shows that her impairment or impairments meet or equal a listed impairment.  *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990).  The evidentiary standards for presumptive disability under the Listings are stricter than for cases that proceed to other steps in the sequential evaluation process because the Listings represent an automatic screening based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  As the U.S. Supreme Court stated in the case of *Sullivan v. Zebley*, "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

---

[5] The Listing of Impairments (the Listings) is in Appendix 1 of 20 C.F.R. Pt. 404 Subpt. P. It describes for each of the major body systems impairments that the Commissioner considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  *See* 20 C.F.R. §§ 404.1525(a), 416.925(a).

When determining whether the combination of impairments is sufficient to render a claimant disabled, the ALJ considers the combined effects of all of an individual's impairments without regard to whether any such impairment, considered alone, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923. "An ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993).

Throughout the decision at issue, the ALJ specifically refers to all of Plaintiff's alleged impairments. The ALJ's consideration of the impairments and medical conditions he determined were not severe under the Regulations is obvious. For example, the ALJ noted Plaintiff testified she had anxiety two to three times per week, with attacks daily in groups or at night when she is laying down. (Tr. 20.) Among others, he noted Plaintiff's statements regarding her feet swelling and feeling like she was walking on bones, her claims of lower extremity edema, blurred vision, lack of peripheral vision, fibromyalgia, carpal tunnel syndrome, insomnia, and back pain. (Tr. 23-24.)

The decision clearly reflects the ALJ considered all of Plaintiff's claimed impairments. Statements of the ALJ may make clear that he considered the impairments in combination, as well as individually. *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986); *accord, Jones v. Dep't of*

*Health & Hum. Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that a claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4 indicates proper consideration of impairments in combination).  Here, the ALJ specifically found, "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1."  (Tr. 22.)

Considering the impairments singly and in combination, the ALJ determined they did not meet or equal a Listing that would direct finding Plaintiff was presumptively disabled.  Thus, under *Wheeler* and *Jones*, it is clear from the ALJ's analysis and wording that he was aware of all Plaintiff's impairments and considered them in combination as required.

## B.   Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  Regardless of its source, the ALJ shall consider and weigh every opinion received into evidence that reflects the source's judgment concerning the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).

Regarding medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's medical opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Eleventh Circuit has stated "good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, the opinions of state agency physicians may outweigh the contrary opinion of a treating physician if the treating physician's opinion has been properly discounted. *See Cooper v. Astrue*, Case No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008) (stating same while finding the ALJ did not follow this rule) (citations omitted). "Further, the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Cruz v. Comm'r Soc. Sec.*, 406 F. Supp. 3d 1337, 1340 (M.D. Fla. 2019) (quoting *Wainwright v. Comm'r Soc. Sec. Admin.*, Case No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)

12

(per curiam)); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining [S]tate [A]gency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p[6] (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### ***Opinion of an Advanced Registered Nurse Practitioner ("ARNP")***

Plaintiff presents Ms. Cindy Grow, ARNP, as a primary treating source from the Hope Clinic in Ocala, Florida. (Doc. 29 at 8-11, 13-19.) Plaintiff claims the ALJ erred in his consideration of the opinion evidence offered by Nurse Grow of Plaintiff's work-related capabilities. (*Id.*)

To determine if substantial weight supports Nurse Grow's opinion evidence, the Court must first ascertain into which category of evidence the

---

[6] SSR 96-6p has been rescinded and replaced by SSR 17-2p effective March 27, 2017. However, because Plaintiff's applications predated March 27, 2017, SSR 96-6p was still in effect on the date of the ALJ's decision.

opinion falls.

A medical opinion is a statement from an acceptable medical source about what the claimant can still do despite his or her impairments.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  As an advanced registered nurse practitioner, Ms. Grow was not an acceptable medical source at the time Plaintiff filed her DIB and SSI applications.  *See* 20 C.F.R. §§ 404.1502(a), 416.902(a) (defining acceptable medical sources).[7]  Therefore, her judgment regarding Plaintiff's functional limitations did not qualify as a medical opinion.  Nurse Grow's opinion was entitled, however, to the same review and weighing process given opinion evidence from non-acceptable medical sources and other sources. 20 C.F.R. §§ 404.1527(f), 416.927(f).

On September 18, 2018, ARNP Cindy Grow completed the Physical Medical Source Statement, the Mental Capacity Source Statement, an Onset Date Questionnaire, and the Fibromyalgia Medical Source Statement, all of which are contained in the record at Tr. 548-565.

Significantly, Nurse Grow assessed Plaintiff's physical limitations would "sometimes [cause] a need to take unscheduled breaks [every 15 minutes] during an 8-hour working day." (Tr. 551.)  She also estimated

---

[7] *See also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62560-01, 13-16 (proposed Sep. 9, 2016) (redefining Acceptable Medical Sources) (to be codified at 20 C.F.R. §§ 404.1502, 416.902); 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (Final rules effective with filings after Mar. 27, 2017).

Plaintiff would likely miss work more than four (4) days per month.  (Tr. 552.)  Such severe limitations would preclude normal work activity.

Nurse Grow completed a Mental Capacity Source Statement and opined that Plaintiff was <u>moderately</u>[8] limited in her ability to make simple work-related decisions; <u>markedly</u>[9] limited in her abilities to (1) get along with co-workers or peers without distracting them or exhibiting behavioral extremes, (2) accept instructions and respond appropriately to criticism from supervisors, (3) adapt and respond appropriately to changes in the work setting, (4) set realistic goals or make plans, (5) maintain attention and concentration for extended periods, (6) sustain an ordinary routine without special supervision, (7) perform at a consistent pace with a one-hour lunch break and two 15-minute rest periods; and <u>extremely</u> <u>limited</u>[10] in her ability to (1) perform activities within a schedule, maintain regular attendance, be punctual within customary limits, (2) work in coordination with or proximity to others without being distracted; (3) complete a normal workday without interruption from psychologically based symptoms limitations in her ability

---

[8]   A moderate limitation was defined as "The individual has limitations functioning in this area, one third of an eight-hour workday. (Tr. 556).

[9]   A marked limitation is one where, "The individual has limitations functioning in this area two thirds of an eight-hour workday.  (Tr. 556).

[10]   An "extreme" limitation means, "There is [a] major limitation in this area. There is no useful ability to function in this area." (Tr. 556).

to deal with the public; deal with work stresses; maintain attention/concentration; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; and relate predictably in social situations.  (Tr. 195-97).

The ALJ summarized Nurse Grow's Mental Capacity Source Statement stating, "[Ms. Grow] opined that the claimant had marked to extreme limitations in concentration and persistence, social interactions and in adaptation.  She based this opinion on physical exam[s], therapies and health history."  (Tr. 21.)  He then gave "little weight" to Ms. Grow's opinion because (1) she was not an acceptable medical source, (2) she only saw Plaintiff three or four times between June 2018 and September 2018, and those visits were for physical ailments, and (3) the treatment notes did not support the severe restrictions. (*Id*.)

The Regulations require that evidence from acceptable medical sources is necessary to establish whether a claimant has a medically determinable impairment.  20 C.F.R. §§ 404.1508, 404.1513(a), 416.908, 416.913(a).  Acceptable medical sources include licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists.  20 C.F.R. §§ 404.1513(a) 416.913(a).  Substantial weight must be given to the opinion, diagnoses, and medical evidence of a one of these providers unless there is good cause to do

otherwise.  *See Lewis v. Callahan*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).

Evidence from other sources may be used to show the severity or effects of a claimant's impairments.  20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).  At the time of these applications, other sources included nurse-practitioners and physicians' assistants.  Regardless of the source, the ALJ is required to evaluate all opinion evidence in the record.  *See* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d).

In evaluating an opinion that does not warrant *controlling* weight, the ALJ must weigh the opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and, 6) the factors which tend to support or contradict the opinion. *Id*.

Here, the ALJ weighed Nurse Grow's opinion of Plaintiff's ability to work with her impairments in accord with the Regulations in place when Plaintiff filed her applications for disability under DIB and SSI.  The ALJ's decision reflects he took into consideration the nature, extent, and length of Nurse Grow's professional relationship with Plaintiff, the sources of information Nurse Grow used in forming her opinion, and the supportability

17

and consistency of the opinion with the other evidence of record.

Thus, the ALJ's reasons for giving little weight to Ms. Grow's opinions are supported by substantial evidence in the record and were made in accord with the applicable Regulations governing the evaluation of opinion evidence in Social Security disability cases. *See* 20 C.F.R. §§ 404.1502, 416.902 (Definitions), 404.1513, 416.913 (Categories of Evidence) and 404.1527, 416.927 (Evaluating Opinion Evidence on or before March 27, 2017). Here, the objective medical evidence did not bolster Nurse Grow's opinion. The evidence Plaintiff provided consisting of her treatment records, medical testing, and clinical findings, does not support the degree of physical and mental work-related limitations Nurse Grow assessed as reflective of Plaintiff's ability to work.

### ***Opinion of Treating Physician Dr. Lucia Hansen, M.D.***

In a February 14, 2017, "To Whom It May Concern" letter, Dr. Lucia R. Hansen, M.D., stated Plaintiff had been her patient since 2015. (Tr. 507.) Dr. Hansen's letterhead reflects she was affiliated with the University of Florida, Department of Community Health and Family Medicine. (*Id.*) Review of the medical records from Shands Healthcare at the University of Florida reveals Plaintiff had an appointment with Dr. Hansen on January 6, 2016. (Tr. 514.)

In her letter, Dr. Hansen remarked Plaintiff had several "work ups and treatments" for the diagnoses of hypothyroidism lower extremities

18

lymphedema, anxiety, depression, insomnia, severe headaches, obstructive sleep apnea and chronic fatigue, but considerable improvement had not been seen. (*Id.*)

The ALJ discussed Dr. Hansen's correspondence in his decision but neglected to state the weight he gave her opinion. (*See* Tr. 24.) Under typical circumstances, failure to state the weight given to the opinion of a treating physician would require remand of the case to the Commissioner of Social Security. *See Winschel*, 631 F.3d at 1179. In this instance, however, the circumstances are not typical.

First, there are no treatment notes in the record specifically signed by Dr. Hansen. Second, Dr. Hansen's opinion does not address the functional limitations arising out of Plaintiff's medically determinable impairments. Rather, Dr. Hansen states the somewhat vague opinion that Plaintiff's medical problems can cause distress making it difficult to function on a regular basis. (Tr. 507.)

Various courts, including this one, have addressed harmless error with their findings. In *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983), the court found harmless error when the ALJ made erroneous statements of fact but applied the proper legal standard when considering the vocational factors in application of the GRIDS. *Id*. at 728. In *Wright v. Barnhart*, 153 F. App'x 678 (11th Cir. 2005), the court noted that although the ALJ must clearly

articulate the reasons for giving less weight to the opinion of a treating physician, and normally failure to do so is reversible error, such failure was a harmless error when correct application of the Regulations would not contradict the ALJ's ultimate findings.  *Id*. at 684.  This Court found harmless error when the ALJ failed to discuss a treating physician's opinion, but even giving controlling weight to the opinion would not have changed the outcome.  *Parton v. Astrue*, Case No. 3:07-cv-63-J-TEM, 2008 WL 897094 (M.D. Fla. Mar. 31, 2008).

In *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989), the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result.  In *Ward v. Commissioner of Social Security*, 211 F.3d 652, 656 (1st Cir. 2000), the court held that while an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.

Here, remand for failing to state the weight afforded Dr. Hansen's opinion would not change the outcome of the case and, thus, would be an empty exercise.  Dr. Hansen did not place specific restrictions on Plaintiff's ability to perform basic work activities.  She merely recites Plaintiff had a complex medical history that included multiple diagnoses for physical and mental impairments and states these medical problems can cause "physical

20

and emotional distress, making [it] difficult. . . to function on a regular basis."
(Tr. 507.)  Even giving controlling weight to this opinion says nothing about
Dr. Hansen's judgment on how Plaintiff could or could not function in a work
environment.

### *Opinions of State Agency Consultants*

In this case, the Commissioner sent Plaintiff for a consultative mental
examination by psychologist Dr. Nicholas Gehle, Psy.D., on September 21,
2017.  Dr. Gehle's report indicates he reviewed Plaintiff's records provided by
the Division of Disability Determinations, prior to examining Plaintiff.  (Tr.
535.)  Upon taking down Plaintiff's history and her responses to several
pointed inquiries, Dr. Gehle concluded Plaintiff "appeared to meet [the]
criteria for Unspecified Anxiety Disorder and Unspecified Neurocognitive
Disorder (Provisional), and he found her prognosis was guarded.  (Tr. 537.)
In evaluating Plaintiff, Dr. Gehle considered and provided his judgment on
Plaintiff's asserted mental impairments under the psychiatric review
technique form. (Tr. 536.)  Ultimately, Dr. Gehle opined Plaintiff was
moderately limited in all areas. (Tr. 536-37.)  He also determined, however,
that Plaintiff displayed good social skills, had fair abstract reasoning,
demonstrated adequate attention and concentration, and the content of her
"observed speech was noted to be relevant, coherent and logical." (Tr. 536-37.)

As noted previously, "[a]bsent good cause, the opinions of treating or

examining physicians must be accorded substantial or considerable weight."
*Delker v. Comm'r Soc. Sec.*, 658 F. Supp. 2d 1340, 1367 (M.D. Fla. 2009)
(*citing Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)).  Here again, the
opinion of a treating or examining physician, i.e., an acceptable medical
source, is not discounted by the ALJ.  Rather, the ALJ in this instance
discounted the examining psychologist's opinion that Plaintiff was
moderately limited in all functional areas of the PRTF and her prognosis was
guarded.  (*See* Tr. 20-21.)  The ALJ gave little weight to Dr. Gehle's opinion of
Plaintiff's mental limitations, citing the single visit for examination and
inconsistency with the overall medical evidence "showing normal mental
status examinations" as reasons.  (*Id*. at 21.)

This Court's independent review of the record confirmed Plaintiff's
mental symptoms waxed and waned, with as many normal findings reported
on examination as were abnormal findings of anxiousness and/or depression.
Further, Plaintiff's mental symptoms were treated conservatively by her
primary care physician and ARNPs with prescription medications.  There is
no record Plaintiff sought mental health counseling.  These facts provide
substantial evidence for the ALJ to give little weight to the opinion of
examining psychologist Nicholas Gehle.

Plaintiff also takes issue with the ALJ's determination giving great
weight to the opinions of the State Agency reviewing psychologists and

physicians.  (Doc. 29 at 15-18.)  The decision reflects the ALJ considered and weighed these opinions, as he was required.  (Tr. 21, 24, 26.)  *See also* SSR 96-6p, discussed above.  The decision also demonstrates the ALJ reviewed the record as whole, taking into account evidence favorable and unfavorable to Plaintiff's claims of disability.  The ALJ did not err in his review and weighing of the State Agency consultants' opinions.

### C.   Determining Plaintiff's Residual Functional Capacity ("RFC")

Plaintiff lastly argues the ALJ erred in determining her RFC and posing hypothetical questions to the VE that did not fairly encompass all of Plaintiff's physical and mental limitations.  (Tr. 29 at 24-27.)  Therefore, Plaintiff asserts, the ALJ improperly relied on the VE's testimony at step 4 to find she could perform some of her past work as normally performed in the national economy.  The Court's review of the record reveals substantial evidence supports the ALJ's assessment of Plaintiff's RFC and her ability to perform some of her past relevant work.

Consideration of all the medical evidence of record is mandated so that the ALJ can accurately determine a claimant's RFC and thereby determine if the claimant can return to past relevant work.  *See* 20 C.F.R. §§ 404.1527, 404.1529, 404.1545, 416.927, 416.929, 416.945.  The focus of a residual functional capacity determination is on the objective medical findings made

by a claimant's doctors and their analyses based on those findings.  *See Lewis v. Callahan*, 125 F.3d at 1440.  The claimant/ plaintiff has the burden of providing the medical and other evidence about his or her impairments for the ALJ to use in reaching his conclusions.  20 C.F.R. §§ 404.1512(a), 416.912(a).  The Regulations direct administrative law judges to "consider all evidence in [a claimant's] case record when [making] a determination or decision whether [the claimant is] disabled."  20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).

The ALJ determined Plaintiff retained the capacity to perform less than the full range of light exertion work.[11] (Tr. 22.)  He decreased the occupational base for light work jobs by adding the limitations Plaintiff can frequently climb ramps and stairs; can occasionally climb ladders, ropes and scaffolds; can frequently stoop, kneel, crouch and crawl; can frequently handle and finger with her bilateral upper extremities; can frequently perform tasks requiring a full field of vision; and must avoid concentrated exposure to extreme cold, extreme heat and work place hazards, such as

---

[11] Light exertion work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b).Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*  Someone found capable of performing light work is also determined to be capable of sedentary work unless additional limiting factors that preclude this determination.  *Id.*

moving machinery, moving mechanical parts, and unprotected heights.  (Tr.

22.)  There are no functional limitations on Plaintiff's mental ability to

perform work related activities in the ALJ's RFC assessment.

    As to her mental impairments, Plaintiff testified she has anxiety

almost every day, with more severe episodes occurring two to three times per

week when she is in a group or there are children nearby kicking up a

"ruckus."  (Tr. 58.)  Plaintiff failed, however, to produce any evidence of

mental health treatment other than prescription medications.  There are no

treatment or progress notes contained in the record.  There are numerous

references throughout the record of anti-depressant and anti-anxiety

medications prescribed for Plaintiff from 2011 through early 2019.  (*See, e.g.*,

Tr. 377-81, 463, 480, 496, 546, 573, 589, 648, 651.)  In sum, the record does

not support Plaintiff's assertion that she has severe mental impairments that

impact her ability to work.

As to her physical impairments, Plaintiff has been treated with

prescription painkillers and muscle relaxers, stability braces, a TENS unit,

chiropractic adjustments, various modalities of hands-on physical care, and,

apparently, a single facet injection and radiofrequency lesioning of an

unspecified part of the lumbar spine.  (*See* Section II, Relevant Background,

above, discussing Plaintiff's medical treatment history.)  Plaintiff's

conservative treatments do not suggest her physical limitations to perform

work activity are more significant than the limitations set forth in the RFC. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (stating that conservative courses of treatment are substantial evidence to discredit a plaintiff's testimony regarding non-exertional impairments); *Morales v. Comm'r Soc. Sec.*, 799 F. App'x 672, 676-78 (11th Cir. 2020) (citing *Wolfe* and finding the plaintiff's treatments that included prescribed medications, physical therapy, and low impact exercises were nonaggressive and conservative tending to negate her claim of disability); *Doig v. Colvin*, Case No. 8:13-cv-1209-T-17AEP, 2014 WL 4463244, at *4-5 (M.D. Fla. Sep. 10, 2014) (stating the meaning of conservative treatment is well known to include any mode of treatment short of surgery, including prescribed medications and steroid injections).

The undersigned's review of the record finds substantial evidence supports the ALJ's determination Plaintiff should be able to perform a reduced range of light exertional work as described in the RFC. Plaintiff's arguments to the contrary lack merit.

When the Social Security Administration finds a disability applicant can perform light exertional work with limitations, the implicit finding that the individual can also perform sedentary work with the same limitations is understood. 20 C.F.R. §§ 404.1567(b), 416.967(b).

In discussing Plaintiff's work history during the administrative hearing, the VE testified that Plaintiff's past relevant work included the following three jobs:  (1) office appointment setter, DOT 237.367.010, sedentary, skill level 3; (2) dispatcher, fleet maintenance, DOT 221.367-066, sedentary, skill level 4, and (3) parts delivery driver, DOT 292.353-010, medium, skill level 3.[12]  (Tr. 61.)

Restating Plaintiff's RFC in a hypothetical question directed to the VE, the ALJ inquired whether such a person could perform Plaintiff's past relevant work as identified.  (*Id*. at 61-62.)  The VE responded affirmatively, stating the individual would be able to perform the appointment setter and dispatcher, fleet maintenance, job. (*Id*. at 62.)

The VE's testimony on this point alone would have been sufficient evidence for the ALJ to have determined Plaintiff was not disabled under the Social Security Act.  However, in an apparent abundance of caution, the ALJ further explored vocational occupations available to an individual with the added limitations of occasional handling and fingering, and the need to elevate one's legs to a stool or cushion height under a table.  (Tr. 62-63.)  The VE identified two alternate, unskilled jobs in the national economy such a

---

[12] The references to "DOT" are short form citations to the United States Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991).

person could perform.  (Id. at 63.)  When the limitations were further increased to require elevation of the legs above waist height, or to include four days of missed work per month on a consistent basis, the VE testified those added restrictions would eliminate all jobs.  (Tr. 63-64.)

This additional line of inquiry further supports the ALJ's decision finding Plaintiff was not disabled from her alleged onset date of March 1, 2016 through the date of the decision, May 1, 2019.

## III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on de novo review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1.    The Commissioner's decision is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment consistent with this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on March 29, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record